UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division

Case Number: 05-14190-CIV-MARTINEZ-LYNCH

VINTAGE RACING MOTORS, INC., a
Washington corporation,

    Plaintiff,

vs.

MILES MORRIS,

    Defendant.
_____/

## ORDER DENYING DEFENDANT MORRIS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant Miles Morris' ("Defendant" or "Morris") Motion for Summary Judgment (**D.E. No. 70**), filed on **March 24, 2006**. The Court has carefully considered the motion, Plaintiff's response (D.E. No. 88), Defendant's reply (D.E. No. 100), and the plethora of associated evidentiary filings. (See D.E. Nos. 71-74, 77, 84, 86, 90, 91-95). The only remaining claim in this case is Count IV of Plaintiff's Complaint, which alleges tortious interference with a business relationship under Florida law against Defendant Morris. *See* (Amended Complaint, D.E. No. 16 at ¶¶ 40-45). For the reasons discussed in this Order, this Court finds that this case presents close issues of law and fact. Accordingly, this Court finds that there are genuine issues of material fact and that summary judgment is inappropriate in the instant case.

The basic facts of this case are not in dispute, however, unsurprisingly, each party has a very different characterization of these basic facts. In essence, Plaintiff alleges that Defendant tortiously interfered with its business relationship with the owner of a collection of vintage

automobiles. Plaintiff alleges that Defendant, a vintage automobile broker, knowingly undercut a pending deal between Plaintiff and the owner of the collection by making a significantly higher offer and making misrepresentations to the owner in order to induce him to sell to Defendant's client instead of the Plaintiff. In contrast, Defendant maintains that he was unaware of a pending deal between Plaintiff and the owner, that any pending deal was still in a proposal stage that does not constitute a protected business relationship, and that Defendant was acting under a privilege of competition. After careful review of the parties' arguments, relevant case law, and the evidence submitted by both parties, this Court finds that there are genuine issues of material fact and that Defendant's motion should be denied in its entirety.

## I. Basic Factual Background

This case revolves around the sale of a unique collection of vintage automobiles, comprised mainly of vintage racing Jaguars and otherwise historically significant automobiles ("Collection").[1] The Collection was assembled by former Defendant Walter C. Hill ("Hill") over the course of many years. Naturally, Mr. Hill was very proud and paternalistic regarding the Collection. The Collection has been the subject of much interest on the part of automobile brokers, and for a number of years Mr. Hill declined to discuss the sale of the Collection.

Mr. Hill, who was approximately 86 years old at the time that the facts giving rise to this lawsuit occurred, gradually became more open to the idea of selling his Collection. Mr. Hill's initial goal was to maintain the Collection as a whole. Hill had hoped that Jaguar/Ford would purchase the Collection, but this option never materialized. Eventually, Hill began to enter into

---

[1] There is no disagreement between the parties about the contents of the collections, which includes twenty-five vehicles, spare engines, and spare parts.

discussions with Plaintiff Vintage Racing Motors ("Plaintiff" or "VRM") about the purchase of the Collection.

VRM, a corporation organized under the laws of the state of Washington, is a licensed motor vehicle dealer engaged in the business of buying, repairing, restoring displaying, and selling valuable and antique automobiles. While this Court does provides a brief overview of the individuals involved with VRM, it should be noted that none of these individuals are parties to this action. Bruce R. McCaw ("McCaw") is a shareholder of VRM. Thor Thorson ("Thorson") is the President of VRM. Chris Keith-Lucas ("Keith-Lucas"), who had known Hill for about thirty years, operated as an agent of VRM in connection with VRM's interest in purchasing the Collection. Bill Harding ("Harding") was a partner with VRM in connection with VRM's interest in purchasing the collection.

During the discussions between Walter Hill and VRM, Hill was represented by his attorney, Jim Covey ("Covey"), while VRM was represented by its attorney, David Koopmans ("Koopmans"). During these negotiations, VRM and Hill were able agree to some general terms of a possible sale. Hill eventually signed a document entitled "Letter of Intent" ("LOI") on September 24, 2006. (Pretrial Stipulation at 16). In the LOI, VRM proposed to purchase the Collection for $8 million. *Id*. VRM never paid the deposit referenced in the letter of intent. *Id*. Furthermore, Hill and VRM never signed any document changing or extending any of the terms in the LOI. *Id*. Plaintiffs maintain that a number of difficulties in Mr. Hill's life, including a hip injury, his wife's illness, and four intervening hurricanes, prevented Mr. Hill from proceeding with the deal at a normal business pace. VRM and Walter Hill continued to stay in contact, and Plaintiff maintains that there was no indication that the deal was off.

However, Hill ultimately sold the Collection to Bruce Weiner ("Weiner") in March of 2005. (Pretrial Stipulation at 17). This sale was facilitated by Miles Morris ("Morris"), who acted as Weiner's agent in the purchase of the Collection. *Id*. Morris is employed by and is a member of Morris & Welford, LLC, a broker specializing in facilitating the purchase and sale of unique vintage automobiles. Morris has known Hill for approximately thirty years and had previously worked at Christie's auction house. *Id*.

On February 28, 2005, Morris faxed a formal offer to Hill on behalf of Weiner to purchase the Collection for $9.5 million. Morris and Weiner flew to Stuart, Florida in mid-March 2005 on one day's notice to view the Hill collection, and Weiner wrote $1 million dollar check to Hill that same day. *Id*. Weiner and Hill had never met in person before. *Id.* On March 18, 2005, Hill signed an Asset Purchase Agreement, and Weiner signed the agreement a couple of days thereafter. *Id*.

Plaintiff did not learn of the sale to Weiner until Keith-Lucas called Hill on March 19, 2005 to propose a visit with Bruce McCaw, VRM's shareholder. (Aff. Keith-Lucas ¶ 18). After failed attempts by Plaintiffs to have Hill reconsider his sale to a third party, this litigation ensued.

**II. Standard of Analysis**

The standard for reviewing a summary judgment motion is stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id*.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id*. However, the nonmoving party: "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In addition, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 248.

In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive

evidentiary burden applicable to the particular cause of action before it." *Anderson*, 477 U.S. at 254.  Summary judgment may be granted if the nonmovant fails to adduce evidence which, when viewed in a light most favorable to him, would support a jury finding in his favor.  *Id*. at 254-55.

Furthermore, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23.  The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment.  *Id*.  If the non-movant's evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87.

### III.  Discussion

The Florida Supreme Court has clearly articulated the elements to prove a cause of action for tortious interference with a business relationship under Florida law: 1) the existence of a business relationship, 2) knowledge of the relationship on the part of the defendant; 3) an intentional and unjustified interference with the relationship by the defendant, and 4) damage to the plaintiff as a result of the breach of the relationship.'" *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)).  Nevertheless, a review of Florida appellate decisions and federal decisions applying Florida law indicates that the application of the basic elements to a live controversy is more difficult.  *See International Sales & Service, Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1155 (11th Cir. 2001), *reh'g denied* (2002) (describing the body

of Florida law regarding tortious interference as "seemingly divergent").  Indeed, the outcome in tortious interference with business relationship cases appears to be highly fact-dependent.

### A.  Existence of a Business Relationship

From the outset, it should be noted that under Florida law there is a close relationship between the causes of action of tortious interference with a contract and tortious interference with a business relationship.  One Florida appellate court noted: "[T]ortious interference with a contract and tortious interference with a business relationship are basically the same cause of action.  The only material difference appears to be that in one there is a contract and in the other there is only a business relationship." *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976).  Another court further suggested the close relationship between the two torts and their increasing prevalence: "The tort of intentional interference with a contractual or business relationship has of late emerged from relative obscurity to provide a quite fashionable basis for contemporary law suits." *Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 657 (Fla. 4th DCA 1980).

There appears to be some uncertainty under Florida law as to what constitutes a sufficient business relationship to establish a prima facie case.  *See International Sales & Service, Inc.*, 262 F.3d at 1155.  A protected business relationship need not be evidenced by an enforceable contract. *Ethan Allen, Inc.*, 647 So. 2d at 814 (citing *Tamiami Trail Tours, Inc.*, 463 So. 2d at 1127).  However, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights."  *Ethan Allen, Inc.,* 647 So. 2d at 814 (citing *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. 1st DCA 1988)).  Thus, an action for intentional interference is

appropriate, even though it is predicated on an unenforceable agreement, if an understanding between the parties would have been completed had the defendant not interfered. *See United Yacht Brokers v. Gillespie*, 377 So. 2d 668 (Fla. 1979); *Scussel v. Balter*, 386 So. 2d 1227 (Fla. 3d DCA 1980), *review denied*, 392 So. 2d 1371 (Fla. 1981). A mere offer to sell, however, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship. *Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops*, Inc., 361 So. 2d 769 (Fla. 4th DCA 1978), *cert. denied*, 368 So. 2d 1370 (Fla. 1979).

However, the Eleventh Circuit has observed that some courts analyzing Florida tortious interference law have not required the plaintiff to demonstrate the existence of legal rights in the alleged business relationship. *International Sales & Service, Inc.*, 262 F.3d at 1157 (citing *Tamiami Trail Tours*, 463 So. 2d at 1127-28 (affirming lower court's finding of a business relationship despite the apparent lack of any legal rights in the relationship between the plaintiff and third party); *Insurance Field Services, Inc. v. White & White Inspection & Audit Service, Inc.*, 384 So. 2d 303 (Fla. 5th DCA 1980) (same)). The Eleventh Circuit hesitated to clearly delineate what business relationship is sufficient: "As a federal court, we are hesitant to insert ourselves in an area of state law that is lacking in clarity." *Id*. at 1158. Similarly, this Court finds that there are genuine issues of material fact regarding the existence of a business relationship in the instant case and that whether a business relationship existed should be determined at trial.

As Defendants emphasize, there were a number of ongoing communications between VRM and Hill even after the October 25, 2004 deadline described in the Letter of Intent, and draft Purchase and Sale Agreements were being circulated even after this date. (Thorson Aff. at

¶ 9). Koopmans, Hill's attorney continued to circulate a draft of the Purchase and Sale Agreement and the Escrow Agreement as late as March 9, 2005. (D.E. No. 71, Exh. 36). Keith-Lucas spoke on the phone with Mr. Hill on or about January 31, 2005, and Hill suggested that there were no problems with the deal. (Keith-Lucas Aff. at ¶ 16). Similarly, Keith-Lucas made a final personal visit to Hill on February 25, 2005, and Hill allowed him to copy titles for VRM. (Keith-Lucas Aff. at ¶ 17; Thorson Aff. at ¶ 11). Hill noted in an email dated March 10, 2005: "I have not as yet cut off the possibility of further contac[t]s with the McCaw group." (D.E. No. 73, Exh. 37).

This Court concludes that there is a genuine issue of material fact as to whether a sufficient business relationship between Hill and VRM existed, and that this issue should be determined by the trier of fact.

### B. Knowledge on the Part of the Defendant

This Court also finds that there is a genuine issue of material fact as to the extent of Morris' knowledge about the business relationship between Hill and VRM, to wit, the extent to which Morris knew that VRM and Hill were in the process of negotiating a deal to purchase the Collection for $ 8 Million and the extent to which he knew the terms of that deal. While Defendants emphasize that Hill had told Morris that he had not entered into any contracts, it is not clear what Morris knew about the negotiations between Hill and VRM. This Court finds that the evidence that Morris moved swiftly to set up a meeting on one day's notice, that he made an offer on behalf of his client at $9.5 Million, and that his client provided a check for $1 Million on the spot when he first saw the Collection, is sufficient to demonstrate a genuine issue of material fact as to what Morris knew about the business relationship between Hill and VRM.

Furthermore, Hill noted in an email dated March 10, 2005: "I have not as yet cut off the possibility of further contac[t]s with the McCaw group" and "I can have a purchase agreement and an indemnity [a]greement for you to review."  (D.E. No. 73, Exh. 37).  It is not clear which purchase agreement and indemnity agreement Hill was referring to, but construing the evidence in the light most favorable to the Plaintiff, the email suggests that the pending deal between Hill and VRM may have served as the starting point, and provided Morris with specific knowledge of the business relationship between Hill and VRM that allowed him to undercut the VRM deal.  Thus, this Court finds that there is a genuine issue of material fact and summary judgment should be denied as to Defendant's argument that Morris had no specific knowledge about the business relationship between Hill and VRM.

### C.  Intentional and Unjustified Interference and Competition Privilege

Much as is the case with the business relationship prong of the tortious interference test, there is uncertainty regarding the state of the law as to the intentional and unjustified interference prong and to the related inquiry of whether a competition privilege exists.  *See International Sales & Service, Inc.*, 262 F.3d at 1158; *Wackenhut Corp*, 389 So. 2d at 657.  For instance, the Eleventh Circuit has observed that under Florida law there is some uncertainty regarding which party has the burden of proof as to demonstrating a competition privilege, s*ee id*., which also has some bearing on whether interference was "unjustified."  The Florida Fourth District Court of Appeal noted:

> [The intentional and unjustified interference prong] involves the application of words such as "unlawful[,]" 'intentional[,]" "unjustified[,]" "malicious[,]" "interfering[,]" and the like.  As the Harvard Law Review characterizes these expressions, they are ". . . an agglomeration of catch-words" which have come into usage because of  ". . . the search, foredoomed to failure, for a rule of thumb which will justly dispose of any set of facts with the precision of a cream-separator[.]" 37 Harv. L. Rev. 143, 144

>  (1924). No doubt we cannot now achieve such precision where so many others have failed, but at least we can do so relative to this particular case ....

*Wackenhut Corp.*, 389 So. 2d at 658. That court found that the intention to interfere had been established and that the burden had shifted to the "interferer to establish that the interference was justified." This Court finds that this approach is a salient one. In light of the genuine issues of material fact regarding Morris' knowledge of the business relationship between VRM and Hill, this Court finds that for purposes of this summary judgment motion Plaintiff has presented sufficient evidence to shift the burden onto Defendant to demonstrate that its interference is justified.

To establish the competition privilege, Morris must show that: 1) the relationship between Morris and Hill concerned a matter involved in the competition between VRM and Morris; 2) it did not employ improper means; 3) it did not intend to create or continue an illegal restraint of competition; and 4) its purpose was at least in part to advance its interest in competing with VRM. *See International Sales & Service, Inc.*, 262 F.3d at 1159 (citing Restatement (Second) of Torts § 768(1) (1977)). "Whether interference with a business relationship is privileged 'depends upon a balancing of the importance ... of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances among which the methods and means used and the relation of the parties are important.'" *Id.* (citing *Heavener, Ogier Servs., Inc. v. R.W. Florida Region, Inc.*, 418 So. 2d 1074, 1076 (Fla. 5th DCA 1982); *Morsani v. Major League Baseball*, 663 So. 2d 653, 657 (Fla. 2d DCA 1995)).

After carefully reviewing the evidence submitted by the parties, this Court finds that

there is a genuine issue of material fact as to whether the Defendants have met their burden of establishing a competition privilege.  The Eleventh Circuit has noted, when construing Florida law, that "when there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in question."  *Manufacturing Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) (citation and internal quotations omitted).

This Court notes that the series of emails from Morris and Hill, which make reference to oral communications between Morris and Hill, suggest that improper means may have been employed.  *See, e.g.*, (D.E. No. 89, Exh. 6; D.E. No. 92, Exh. 14).  Most notably, in an email Morris relayed to Hill that he had "recounted the situation [he] and [Hill] were in, [to Morris' wife], and [she] said that McCaw would have no difficulty whatsoever in chewing [Hill] and [Morris] up and spitting [them] out without a care in the world."  (Plaintiff's Exh. 13).  This Court recognizes that this was a reference to McCaw, as opposed to VRM in general.  However, because McCaw was significantly involved with VRM and with the potential deal to purchase the Collection, and because a district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion for summary judgment, this Court finds that this evidence could reasonably be construed as part of an improper method of frightening Hill away from the deal with VRM.  Thus, this Court finds that there are genuine issues of material fact as to whether Defendant has adequately demonstrated a competition privilege and that the motion for summary judgment should also be denied on this basis.

**D.  Damages**

Defendant argues that Plaintiff has not demonstrated sufficient evidence of damages, or evidence of any effort to mitigate damages. Defendant argues that VRM has not established damages with a "reasonable degree of certainty." (D.E. No. 70 at 18). In response, Plaintiff emphasizes testimony from Bruce McCaw in interrogatories regarding VRM's damages. (D.E. No. 88 at 12). Plaintiff argues that "VRM seeks to recover damages in the form of the benefit of the bargain it would have realized by acquiring the Hill Collection for the agreed price and subsequently selling it to third parties for a profit." *Id*. While this Court is not without some reservations as to the ability of the Plaintiff to prove damages at trial, one Florida Appellate Court in a tortious interference case observed: "Uncertainty as to the amount of damages or difficulty in proving the exact amount will not prevent recovery where it is clear that substantial damages were suffered and there is a reasonable basis in the evidence for the amount awarded. Ultimately the degree of certainty simply requires that the mind of a prudent impartial person be satisfied with the damages." *Insurance Field Services, Inc.*, 384 So. 2d at 308. This Court finds that there is sufficient evidence to demonstrate a genuine issue of fact as to whether this liberal standard can be met at trial. (See McCaw Depo. at 31-32; D.E. No.93 Exh. 19 at 7-8). The record taken as a whole could lead a rational trier of fact to find for the nonmoving party, thus summary judgment on the basis of damages being too speculative should be denied. *Allen*, 121 F.3d at 646. It is hereby:

**ORDERED AND ADJUDGED** that

1. Defendant Morris' Motion for Summary Judgment (**D.E. No. 70**) is **DENIED**.

2. Defendant Morris' Motion for Oral Argument (**D.E. No. 75**) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 13 day of October, 2006.

-14-

                                        JOSE E. MARTINEZ
                                        UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record